# Exhibit C

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 82
-------------------------------------------------------------------x
THE PEOPLE OF THE STATE OF NEW YORK,   :   **DECISION AND ORDER**
                                       :   INDICTMENT 621-10
        -against-                      :
                                       :
GIGI JORDAN,            DEFENDANT      :
-------------------------------------------------------------------x
CHARLES H. SOLOMON, J.:

      On November 5, 2014, defendant was found guilty by a jury of Manslaughter in the First Degree [Penal Law §125.20(2)]. The proof at trial established that defendant killed her eight year old son, Jude Mirra, by feeding him an overdose of prescription medication. The jury found that the defendant was acting under the influence of an extreme emotional disturbance. Therefore, they found her guilty of Manslaughter in the First Degree rather than intentional Murder, as charged in the indictment. On January 21, 2015, defendant filed a motion to set aside the verdict pursuant to CPL 330.30(1). The People filed a response in opposition on March 12, 2015, to which the defense replied on April 14, 2015. Defendant argues that her right to a public trial was violated when, on October 1, 2014, the courtroom was briefly closed to the public at the request of the prosecution and over defense counsel's objection. Defendant argues that this alleged violation, standing alone, requires that the jury's verdict be set aside.

      CPL 330.30(1) permits the court to set aside or modify a verdict prior to sentencing upon "any ground appearing in the record which, if raised upon an appeal from a prospective judgment of conviction, would require a reversal or modification of the judgment as a matter of law by an appellate court." A motion to set aside the verdict does not lie when the facts supporting the claim rest outside the record. People v. Giles, 24 NY3d 1066 (2014). Here, the motion is properly before the Court as defendant's claim is wholly a matter of record.

The facts, as relevant to this motion, are not in dispute. Jury selection commenced on September 3, 2014 and concluded on September 8, 2014. The People's first witness was called on September 10, 2014. The People presented twenty-six witnesses on their case-in-chief, which concluded on September 29, 2014. The defense case commenced that same day with the testimony of Dr. Werner Spitz. Dr. Spitz' testimony continued on October 1, 2014.

On October 1, 2014, when the parties first appeared that morning, and prior to the arrival of the jury, the People asked to approach the bench concerning something that had happened on the previous evening. A brief bench conference was held during which the People outlined what they wanted to place on the record in a closed courtroom. The People asked that they be allowed to make a record in a closed courtroom because they were concerned that the right to a fair trial might be compromised if the press and public were present. Defense counsel objected to the People's application and, over their objection, the Court closed the courtroom to hear the People's application.

The People brought to the Court's attention that an email had been sent to more than 100 people, many of whom appeared to be members of the media, from "Thomas Truth" informing them of the creation of a website entitled "GigiJordanTruth.com." The People handed up a copy of the email, as well as a list of the recipients' email addresses. The purported reason for the website and email was to inform the recipients of information that the Court had already ruled was inadmissible at defendant's trial. In addition to that, defendant maintained that she was not getting a fair trial. The closing line of the email was, "I've posted this website in the hope that the truth will come out. -Gigi Jordan." As would be expected, this email and website were of great concern to the Court.

The People asked the Court to instruct the jury once again not to read, listen to or watch anything reported about the case in the media. Additionally, the People asked the Court to obtain an assurance from defendant's attorneys that no one associated with defendant's legal team was responsible for creating this website and disseminating the email in question. Ronald Kuby, a member of the defense team, but not present at counsel table during this trial, objected to the closure of the courtroom. Mr. Kuby acknowledged that if a member of the defense team or anyone affiliated with the defense team was responsible for creating the website, that would constitute a violation of the ethical and disciplinary rules with which attorneys are required to comply. The Court noted the defense objection to the closure and stated that the minutes of the proceeding would be transcribed and placed under seal in the court file. The defense objected to the record being sealed. Additionally, Mr. Kuby asked if defense counsel would be permitted to speak to the media about what had just transpired in the closed courtroom. The Court stated that there was no "gag" order in place and therefore, defense counsel was free to accurately report what took place in the closed session. Finally, the Court invited Mr. Kuby to move in writing to unseal the minutes and stated that if the defense made the application it would be ruled on before the end of the trial. As it turns out, it was unnecessary for the defense to make any type of motion or application concerning these minutes.

The proceedings in the closed courtroom lasted approximately fifteen minutes. In the transcript, the proceedings start at page 1646 and conclude at page 1667, approximately twenty-one pages in an almost 5000 page trial transcript. When the courtroom was reopened, the jury was brought in and Dr. Spitz was recalled to the stand for continued cross-examination. Dr. Spitz' testimony continued until the luncheon recess. The Court reconvened after the lunch hour

and there was a discussion regarding Dr. Spitz' testimony. At approximately 2:30 p.m., the issue of whether the previously sealed minutes should remain under seal was revisited. After hearing from the People, the Court indicated that there was no legal reason why the minutes from earlier that morning should remain under seal. Accordingly, the Court ordered that the minutes be immediately unsealed and that they be made part of the public record.

Defendant argues that her right to a public trial was violated when the Court closed the courtroom without first making the appropriate findings under Waller v. Georgia, 467 US 39 (1984). Because of that alone, defendant maintains that the motion to set aside the verdict must be granted. The People first argue that the rules set forth in *Waller* do not even apply to this case. That is so, they contend, because the type of proceeding in question in this case does not even involve defendant's right to a public trial. The People next argue that even if *Waller* applied in this situation, the Court did comply with the *Waller* requirements. Finally, the People assert that even if the Court was wrong in closing the courtroom and in sealing the record, the error was so trivial and so inconsequential that it would be inconceivable to set aside the jury's verdict for that reason.

The law in this area is not in dispute. Every defendant is guaranteed the right to a public trial under both the Sixth and Fourteenth Amendments, as well as under the New York State Constitution. People v. Echevarria, 21 NY3d 1, 11 (2013). The main issue on this motion is the scope of that right. In *Waller*, the Supreme Court stated, "[t]his Court has not recently considered the extent of the accused's right under the Sixth Amendment to insist upon a public trial, and has never considered the extent to which that right extends beyond the actual proof at trial." Waller, *supra* at 44. The court was called upon to determine whether the right to a public

trial "extends beyond the actual proof at trial" and whether it should apply to suppression hearings. *Id*. Cognizant of the purposes underlying the right to a public trial, which are to ensure the accused is dealt with fairly by both the court and prosecution, as well as to encourage witnesses to come forward and to discourage perjury, the court held that the right to a public trial encompassed suppression hearings. The court later extended a defendant's right to a public trial in criminal cases to the jury selection process. Presley v. Georgia, 558 US 209 (2010); *accord* People v. Floyd, 21 NY3d 892 (2013); People v. Martin, 16 NY3d 607 (2011). Thus, it is clear that a defendant's right to a public trial is implicated when the courtroom is closed during evidentiary proceedings. People v. Echevarria, *supra* (closure during undercover officer's testimony); People v. Kin Kan, 78 NY2d 54 (1991)(closure during accomplice's testimony); People v. Mateo, 73 NY2d 928 (1989)(closure during witness' cross-examination). However, the facts here are quite different.

The proceeding at issue was not the type of trial proceeding that falls within the ambit of *Waller*. Significantly, no testimony was being taken, no legal issues, nor anything of a substantive nature, was being discussed. When evaluated in light of the concerns the right to a public trial is designed to protect, it is clear that none of them are implicated here. First, as stated, nothing of an evidentiary nature was discussed. Next, the proceeding cannot be characterized as a substantive trial proceeding, such as jury selection, wherein a defendant does have the right to a public trial. The subject matter of the proceeding was an allegation that defendant was disseminating to the press and public information about the case that had been previously ruled inadmissible by the Court. This was completely tangential to the trial and had nothing to do with the evidence in the case. The People cannot be faulted for bringing the emails

5

and website to the Court's attention in a closed setting. Understandably, they did not want to highlight that information, because to do so might very well have created additional media coverage that might have been difficult for the jury to avoid. Equally valid was the prosecutions's concern that one of the many people employed by defendant might have been involved in the dissemination of the emails and creation of the website. If that were so, this would constitute a total disregard for the Court's numerous admonitions regarding trial publicity and the ethical guidelines. Under these circumstances, the People's request that an inquiry be made of the defense team in a closed setting was certainly appropriate. However, the simple fact that this proceeding took place inside the courtroom during trial does not mean that it was a trial proceeding, as contemplated by *Waller*.

Finally, even if under some strained interpretation *Waller* was found to apply to this case, the closure here was so *de minimis* and so trivial that setting aside the verdict would be a miscarriage of justice. *See,* People v. Peterson, 81 NY2d 824 (1993); People v. DeAngelis, 5 AD3d 274 (1st Dept 2004), *lv denied* 2 NY3d 798; Gibbons v. Savage, 555 F3d 112 (CA2 2009), *cert denied* 558 US 932. Indeed, the closure was hardly a closure at all. The courtroom was closed for approximately fifteen minutes in a two month long trial. A transcript encompassed only twenty-one pages of an almost 5000 page record. In addition, the Court told defense counsel that he could speak to the media about what had transpired during the proceeding, provided that he did so accurately. It should also be noted that the discussion was on the record and both exhibits, namely the email and the recipient list, were placed under seal, allowing for the possibility of unsealing at a later time. In fact, defense counsel was invited to make a written application to unseal the minutes and the Court stated that a ruling would be made prior to the

end of trial. Significantly, counsel never had to make an application because after the luncheon recess, at approximately 2:30 p.m., the Court decided to unseal the record. As stated, the closure lasted only approximately fifteen minutes and the record was sealed for only a matter of hours. The subject matter discussed was not evidentiary in nature and was in no way related to the trial proceedings. Ironically, closing the courtroom in the first instance was not even necessary. That is so because the highly prejudicial and totally inaccurate information had already been disseminated to the press and public the previous evening in the email signed by the defendant. However, even if under some theory it was error to close the courtroom to discuss this sensitive issue, the closure was clearly not the type that should result in the verdict being set aside.

For the reasons set forth above, the Court finds that there is no legal basis requiring the reversal of the judgment of conviction by an appellate court. Accordingly, defendant's motion to set aside the verdict under CPL 330.30(1) is denied.

Dated: May 28, 2015
       New York, New York

_____
CHARLES H. SOLOMON, J.S.C.