UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GIGI JORDAN,

                         Petitioner,

        -v-

AMY LAMANNA, IN HER OFFICIAL CAPACITY AS
SUPERINTENDENT OF THE BEDFORD HILLS
CORRECTIONAL FACILITY,

                         Respondent.

CIVIL ACTION NO.: 18 Civ. 10868 (SLC)

**OPINION & ORDER**

**SARAH L. CAVE**, United States Magistrate Judge.

## I.    INTRODUCTION

On November 20, 2020 Petitioner Gigi Jordan ("Jordan"), who is serving an 18-year prison sentence following her conviction for first degree manslaughter in New York State Supreme Court, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition"). The Petition asserted that the New York State Supreme Court, Appellate Division, First Department (the "Appellate Division") unreasonably applied clearly established federal law in holding that Jordan's Sixth Amendment right to a public trial was not violated when the trial court closed the courtroom to the public midway through her nine-week trial to conduct a hearing that involved legal arguments by the parties, evidentiary issues, and proposed instructions to the jury. (ECF Nos. 3 at 2–3; 6 at 5; 29 at 1).  Respondent Amy Lamanna, Superintendent of the Bedford Hills Correctional Facility ("Respondent"), where Jordan is serving her sentence, is represented by the New York County District Attorney (the "DA"), and opposed the Petition on the ground that the closure of the courtroom for a conference that was "akin to a discussion in chambers"

did not violate clearly established precedent of the United States Supreme Court.  (ECF No. 14 at 9).

On September 25, 2020, the Court granted the Petition, holding that the Appellate Division's decision rejecting Jordan's Sixth Amendment claim constituted an unreasonable application of the public trial right clearly established by Waller v. Georgia, 467 U.S. 39 (1984) and Presley v. Georgia, 558 U.S. 209 (2010).  (ECF No. 34) (the "September 25 Order").  Having granted the Petition, the Court ordered Respondent to "release Jordan from custody unless the DA inform[ed] the Court of its decision to re-try her within the next 90 days."  (Id. at 42).

On September 28, 2020, the DA appealed the September 25 Order to the Second Circuit. (ECF No. 37).  Now before the Court is the DA's motion to stay the September 25 Order, (the "Stay Motion") (ECF No. 38), and Jordan's cross-motion for release pending appeal (the "Release Motion") (ECF No. 41).  After receiving full briefing from the parties, hearing oral argument, and receiving post-argument supplemental submissions (ECF Nos. 38, 40–41, 47–48, 50), the Court GRANTS IN PART and DENIES IN PART the Stay Motion, and GRANTS IN PART and DENIES IN PART the Release Motion.

## II.  <u>BACKGROUND</u>

### A. <u>Factual Background</u>

The Court assumes familiarity with the facts, a full recitation of which is included in the September 25 Order.  (ECF No. 34).  Jordan is incarcerated at Bedford Hills Correctional Facility, having been convicted on November 5, 2014 of first-degree manslaughter in connection with the death of her son and sentenced to 18 years' imprisonment.  (ECF No. 34 at 8, 10; ECF No. 41-1 at 4).  Jordan has served ten years and eight months, and, due to good time served, has been

given a provisional release date of July 5, 2025, at which time she would have served fifteen years and five months.  (ECF No. 41-4 at 5; ECF No. 50 at 10).  Thus, at present, Jordan has served over 70% of her reduced sentence.  (ECF No. 50 at 10).

Jordan will turn 60 years old in December 2020, and has chronic respiratory asthma, which puts her at a higher risk of morbidity and mortality were she to be infected with COVID-19.  (ECF Nos. 41 at 7, 41-1 at 8–20).  At Bedford, one prisoner is known to have died from COVID-19, and others have tested positive, although as of November 12, 2020, there were no positive cases.  (ECF Nos. 41 at 7; 44 ¶ 5).

**B.   Procedural History**

On October 9, 2020, the DA filed the Stay Motion.  (ECF No. 38).  On October 19, 2020, Jordan filed the Release Motion in which she opposed the Stay Motion and cross-moved for release.  (ECF No. 40).  On October 26, 2020, the DA filed its reply in support of the Stay Motion and opposed the Release Motion.  (ECF No. 44).  On October 28, 2020, Jordan filed her reply in support of the Release Motion.  (ECF No. 45).  On November 2, 2020 the Court heard oral argument on the Stay Motion and the Release Motion.  (ECF No. 50).

In response to the Court's request during oral argument, on November 6, 2020, Jordan submitted a supplemental letter describing additional information concerning her residence, were she to be released, and potential bond co-signors.  (ECF No. 47).  The DA then filed a letter reiterating his opposition to Jordan's release, but suggesting that if the Court were to order release, she be transferred to federal custody "for the securing order and any accompanying conditions to be put in place before [Jordan] is released."  (ECF No. 48 at 2).  The DA also asks

this Court to stay any order granting Jordan release on bail to permit an application to the Second Circuit.  (Id.)

### III.    DISCUSSION

#### A.  Applicable Legal Standards

Jordan "is subject to federal court jurisdiction during the pendency of [her] petition for a writ of habeas corpus and any appeal from an order granting that writ."  Waiters v. Lee, 168 F. Supp. 3d 447, 454 (E.D.N.Y. 2016) (citing Jago v. U.S. Dist. Ct., 570 F.2d 618, 621 (6th Cir. 1978) (explaining that once writ of habeas corpus is granted, "the body of the petitioner came under the lawful control of the district court.  In legal contemplation that control continues pending decision whether to free the petitioner or return him to state custody.")); see Rosa v. McCray, No. 03 Civ. 4643 (GEL), 2004 WL 2827638, at *7 (S.D.N.Y. Dec. 8, 2004) (noting that federal district court retains jurisdiction over bail order during appeal of Court of Appeals' order granting petition).

Federal Rule of Appellate Procedure 23(c), which governs the release of a successful habeas corpus petitioner, provides:

> While a decision ordering the release of a prisoner is under review, the prisoner must — unless the court or judge rendering the decision, or the court of appeals, or the Supreme Court, or a judge or justice of either court orders otherwise — be released on personal recognizance, with or without surety.

Fed. R. App. P. 23(c).  Rule 23(c) "undoubtedly creates presumption of release from custody" in cases where a district court has granted relief to a habeas petitioner.  Hilton v. Braunskill, 481 U.S. 770, 774 (1987).

In <u>Hilton</u>, the Supreme Court directed federal courts to consider the following factors to determine whether to grant a stay pending appeal of an order granting habeas corpus relief: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.  481 U.S. at 776.  "In addition, a court must consider the possibility of flight, whether there is a risk the petitioner will pose a danger to the public if released, and whether the state has an interest in continuing custody and rehabilitation pending a final determination of the case on appeal."  <u>Brown v. Ercole</u>, No. 07 Civ. 11609 (NRB), 2009 WL 1390854, at *2 (S.D.N.Y. May 13, 2009) (citing <u>Hilton</u>, 481 U.S. at 777); <u>see</u> <u>Waiters</u>, 168 F. Supp. 3d at 451 (same).

**B.  <u>Analysis</u>**

**1.  <u>Likelihood of the DA's success on the merits of the appeal</u>**

With respect to the first <u>Hilton</u> factor, the Supreme Court explained:

> Where the State establishes that it has a strong likelihood of success on appeal, or where, failing that, it can nonetheless demonstrate a substantial case on the merits, continued custody is permissible if the second and fourth factors in the traditional stay analysis militate against release.  Where the State's showing on the merits falls below this level, the preference for release should control.

481 U.S. at 778 (internal citations omitted).  "Courts have described the likelihood of success on appeal as 'a calculation that requires disinterested analysis and frank self-criticism by the district court, [which] seems inevitably to gravitate toward immediate release.'"  <u>Waiters</u>, 168 F. Supp. 3d at 452 (quoting <u>Hernandez v. Dugger</u>, 839 F. Supp. 849, 852 (M.D. Fla. 1993)).

After "reviewing the circumstances of the case with all the disinterest I can muster, I conclude that the [DA's] likelihood of success on appeal is low." Waiters, 168 F. Supp. 3d at 452. I reach this conclusion for four reasons.

First, the DA acknowledges that the September 25 Order was "substantial" and "careful" (ECF No. 38 at 5; ECF No. 50 at 3), but does not attempt to demonstrate that the Court misinterpreted any material facts, misapplied any controlling law, or overlooked any analogous decision ruling the opposite way. The DA simply states that he "will not attempt to relitigate the Court's rejection of [his] arguments by claiming that success on the merits is likely." (ECF No. 38 at 5). To be certain, "rehash[ing]" the same arguments that the Court "has already found to be unpersuasive with respect to" Jordan's Petition would be insufficient to satisfy the first Hilton factor in any event, so the DA's decision not to repeat arguments that the Court has already rejected is prudent. Stevens v. Carlin, No. 14 Civ. 403 (REB), 2018 WL 1596872, at *1 (D. Idaho Apr. 2, 2018). In the absence of any showing of an error in the September 25 Order, I am compelled to conclude that the DA is not likely to succeed on the merits of his appeal.

Second, because the DA has not raised any new arguments on the merits, it is reasonable to infer that he will make the same arguments on appeal as he raised in opposition to Jordan's petition. Had the Court concluded that those arguments were correct, however, it would not have granted Jordan's Petition in the first place. See Waiters, 168 F. Supp. 3d at 452 ("Obviously, had I believed the State's argument to be correct, I would not have granted Waiters' petition to begin with."). The Stay Motion does not provide grounds to conclude anything other than that the Second Circuit will ultimately agree that "the Appellate Divisions decision rejecting Jordan's Sixth Amendment claim constituted an unreasonable application of the public trial right clearly

established by <u>Waller v. Georgia</u>, 467 U.S. 39 (1984) and <u>Presley v. Georgia</u>, 558 U.S. 209 (2010)."
(ECF No. 34 at 2).  <u>See</u> <u>Waiters</u>, 168 F. Supp. 3d at 452 ("I believe the Second Circuit will conclude
that defense counsel's failure to offer Waiters's medical records at trial fell below the standard
of care we demand of lawyers, and that it was unreasonable for the state court to conclude
otherwise.")

Third, the DA's description of the briefing by the parties and the length of the
September 25 Order as "substantial" fails to demonstrate a "substantial case on the merits" of
the appeal.  (ECF No. 38 at 5).  <u>See</u> <u>Hilton</u>, 481 U.S. at 778.  Even if page counts gave some
indication of substance — a proposition the Court finds doubtful — at most, they indicate
extensive briefing of the merits in <u>this</u> Court, not the substance of the appellate issues.  In any
event, the fact that a court may hear oral argument on a habeas corpus petition or order post-
argument briefing is hardly novel or indicative of a decision that should be reversed on appeal; if
anything, the Court's "careful" — to use the DA's term — review of the Petition and the DA's
arguments in opposition gives rise to the inference that the appellate issues will not be
substantial.

Fourth, the DA's proposal that the Court of Appeals might affirm the finding of a public
trial right violation "but simply [order] a do-over of the closed proceeding" is the opposite of
what he argued before this Court and is therefore unpersuasive.  (ECF No. 41 at 5).  In opposing
the Petition, the DA acknowledged that this could be a case where "there is no mechanism for
repeating just a portion of . . . a trial that is already over," and conceded the "impracticality" of
re-conducting the Closed Proceeding that occurred during Jordan's trial.  (ECF No. 32 at 5).  As

explained in the September 25 Order with citation to numerous authorities, the appropriate remedy for the violation of Jordan's public trial right is a new trial.  (ECF No. 34 at 40-42 & n.10).

Accordingly, because the DA has failed to demonstrate a likelihood of success on the merits, or a substantial case, on appeal, this factor weighs against granting a stay.

### 2.  Injury to the DA absent a stay

The DA argues that he would be irrevocably harmed absent a stay because he "would have to take all the necessary steps to retry [Jordan] in parallel with the appeal," which would be "an enormous waste of resources and time for the courts, the parties, and the witnesses."  (ECF No. 38 ¶ 13).  Having to incur, however, "'[t]he ordinary incidents of litigation—the time and other resources consumed—do[es] not constitute irreparable harm.'"  U.S. ex rel. Newman v. Rednour, 917 F. Supp. 2d 765, 791 (N.D. Ill. 2012) (quoting Crist v. Miller, 846 F.2d 1143, 1144 (7th Cir. 1988)); see Conkright v. Frommert, 556 U.S. 1401 (Ginsburg, J., in chambers) (quoting Sampson v. Murray, 415 U.S. 61, 90 (1974) ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough.")).  The DA does not point to any circumstances comparable to those in cases in which courts have stayed the release of successful habeas corpus petitioners pending appeal.  See, e.g., Hassoun v. Searls, 968 F.3d 190, 204 (2d Cir. 2020) (granting stay of release of successful habeas corpus petitioner who was deemed to be national security risk).  Nor do the steps the DA suggests he would need to take to place Jordan's case on the trial calendar rise to the level that the Second Circuit has deemed justified a stay in other circumstances.  Compare New York v. United States Dep't of Homeland Sec., 969 F.3d 42, 86 (2d Cir. 2020) (finding irreparable harm warranting a stay where implementation of order would have required administrators to "undertake costly revisions" to

benefit programs, impacting the community, and causing significant "economic harm").  As Jordan correctly points out, "[t]he prospect of parallel proceedings is always present when a federal court grants habeas relief and the State notices an appeal."  (ECF No. 41 at 9).  If the prospect of parallel proceedings were enough to show injury to warrant a stay, the presumption of release that Rule 23(c) provides would be virtually meaningless.

Even if expenditure of litigation resources in general could demonstrate injury under Rule 23(c), the Court can mitigate any risk of that injury by a simple fix to the language of the September 25 Order — modifying the retrial provision to defer the DA's obligation to notify the Court of its intent to retry Jordan until after the Second Circuit rules on the DA's appeal.  See Pouncy v. Palmer, 168 F. Supp. 3d 954, 970 (E.D. Mich. 2016) (ordering stay sine die of order requiring State to retry petitioner); Newman, 917 F. Supp. 2d at 791 (finding "that it is appropriate to permit the State to defer any actual retrial of [petitioner] — if the State chooses that path — until the conclusion of its appeal . . ."); Franklin v. Duncan, 891 F. Supp. 516, 522 (N.D. Cal. 1995) (ordering that State "need not retry [the petitioner] during the pendency of appeal" of order granting habeas petition).  The Court acknowledges that the wording of the September 25 Order could be ambiguous to suggest that the retrial itself had to occur within 90 days; the Court did not intend that the DA be required to retry Jordan within 90 days or while any appeal was pending, only that the DA notify the Court of his intentions within 90 days.  In any event, by stating his intent to retry Jordan absent a stay from this Court or success on appeal (see ECF No. 44 at ¶ 2), the DA has essentially satisfied his notice obligation under the September 25 Order. Nevertheless, this clarification does no harm to Jordan's interests and is appropriate to minimize any risk of unnecessary expenditure of resources.  See Pouncy, 168 F. Supp. 3d at 970 (noting

that because petitioner was released pending appeal, he had "no strong countervailing interest in a prompt retrial").

The DA also argues that this Court should not set "bail at this juncture at all," and that bail should only "be considered by the state court that will be trying [Jordan] on an open indictment." (ECF No. 49 at 1).  The DA's argument ignores the fact that, while her Petition was pending in this Court and while the DA's appeal is pending, Jordan is subject to federal court jurisdiction and this Court may set bail conditions it deems necessary.  See Waiters, 168 F. Supp. 3d at 454 (collecting cases); Rosa, 2004 WL 2827638, at *7 ("There is no question that [the district court], on entering the conditional release order, retained full power and discretion under Rule 23 to set any appropriate bail conditions pending appeal of her order.").  Not until the DA's appeal of the September 25 Order has been resolved by the Second Circuit "will [she] be back in the state's jurisdiction, either for retrial or for continued incarceration on [her] original conviction."  Id.; Rosa, 2004 WL 2827638, at *7 (explaining that "the filing of the appeal does not deprive [the district court] of jurisdiction to set [bail] conditions" pending appeal).  This Court, accordingly, is the proper forum to evaluate bail and other conditions of release pending the DA's appeal.  See id. at 455 (ordering successful habeas corpus petitioner to post bond and imposing other conditions of release pending state's appeal).

Finally, during oral argument the DA asserted an "interest in continuing [Jordan's] custody and rehabilitation" pending appeal.  (ECF No. 50 at 3); accord Hilton, 481 U.S. at 777.  The fact, however, that Jordan has served over 70% of her sentence renders that interest at its "weakest" point.  Id.; see Waiters, 168 F. Supp. 3d at 452–53 (finding that State's interest in continued custody and rehabilitation was weak given that petitioner had served ten years in prison);

Pouncy, 168 F. Supp. 3d at 967–68 (concluding that the fact that petitioner had served ten years in prison minimized risk of injury to State's interest in continued custody).

Accordingly, subject to the modification of the retrial provision of the September 25 Order described above, the Court finds that the absence of an irreparable injury to the DA absent a stay weighs against delaying Jordan's release.

### 3.   **Irreparable injury to Jordan absent a stay**

The Supreme Court recognized in Hilton that a habeas petitioner's interest in release is "always substantial." 481 U.S. at 777. Thus, "[h]aving succeeded on [her] habeas claim, [Jordan] has a strong interest in [her] release from custody." Pouncy, 168 F. Supp. 3d at 969. The DA does not attempt to argue otherwise.

Continuing to detain Jordan pending the outcome of the DA's appeal would substantially injure Jordan's interests in several respects. First, as noted above, she has already served nearly ten years of her sentence, and there is no evidence that she received any disciplinary ticket or infraction during her incarceration. (ECF No. 41-1 at 4). Jordan also did not have any prior felony or misdemeanor convictions. (Id. at 8). While the parties each speculate as to the outcome of any retrial and the length of any potential resentencing (see ECF Nos. 38, 41), it is possible that any new sentence could be shorter than the time she has already served, such that "further extending [her] confinement weighs heavily against a stay." Brown, 2009 WL 1390854, at *3; see Waiters, 168 F. Supp. 3d at 453 ("The deprivation of a person's liberty has never been taken lightly in our justice system. The possibility that Waiters will spend additional years in prison despite the issuance of a writ of habeas corpus is of great significance.").

Second, Jordan argues persuasively that the COVID-19 pandemic has "further amplified [her] interest in release." (ECF No. 41 at 7). Although at present there does not appear to be an outbreak of the virus at Bedford Hills, that facility has experienced numerous cases, and her age and chronic asthma put her at increased risk should she become infected. See Coronavirus Disease 2019 (COVID-19), Center for Disease Control and Prevention (last updated Sept. 11, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html. Courts in other districts have recognized that the COVID-19 pandemic weighs in favor of release under Rule 23(c). See Hughes v. Vannoy, No. 16 Civ. 770 (BAJ) (RLB), 2020 WL 2570032, at *2 (M.D. La. May 21, 2020) (finding that petitioner's preexisting health conditions put him at increased risk should he contract COVID-19 and justified release); Myers v. Superintendent, Ind. State Prison, No. 16 Civ. 2023 (JRS) (RLB), 2020 WL 2803904, at *6 (S.D. Ind. May 29, 2020) (finding that "the impact of COVID-19," which was present in petitioner's facility, "heighten[ed] [his] already substantial interest in release"). Although research has not revealed that a court in this District has considered a Rule 23(c) motion during the COVID-19 pandemic, several courts have taken the pandemic into account in ordering post-conviction, pre-sentencing release. See, e.g., United States v. McKenzie, 450 F. Supp. 3d 449, 452 (S.D.N.Y. Mar. 30, 2020) (collecting cases and ordering release under 18 U.S.C. § 3154(c) of asthmatic defendant who was at "heightened risk . . . of serious complications from exposure to COVID-19").

Because Jordan "unquestionably would" suffer substantial injury from continued detention, the Court finds that this factor weighs against a stay and in favor of release. Stevens, 2018 WL 1596872, at *2.

4. **Public interest**

In <u>Hilton</u>, the Supreme Court explained that "if the State establishes that there is a risk that the prisoner will pose a danger to the public if released, the court may take that factor into consideration in determining whether or not to enlarge him." 481 U.S. at 777. The DA does not argue that Jordan poses any danger to the public, but contends that the public interest favors staying Jordan's release pending appeal because "her guilt is not in issue" given that she "won" her trial by convincing the jury, through her own trial testimony, to convict her of manslaughter instead of first degree murder. (ECF No. 38 ¶ 13). The DA continues that her habeas petition was "unrelated to the admissibility of evidence of [her] guilt," and that evidence is "even stronger now because Jordan has "admit[ed] the crime of which she was convicted." (<u>Id.</u>)

One would be hard-pressed to agree with the DA that Jordan, who has served nearly eleven years of an 18-year prison sentence based on a constitutionally-defective conviction, "won" her trial in any sense of the word. The DA's premise seems to be that there was "no harm, no foul" with respect to the violation of Jordan's Sixth Amendment public-trial right because she has admitted her role in her son's death. As this Court explained at length in the September 25 Order, however, the Supreme Court has held the harmless error analysis does not apply to violations of the Sixth Amendment public-trial right. (<u>See</u> ECF No. 34 at 21, 35). Nor was the violation that occurred here "trivial." (<u>Id.</u> at 35–36). Contrary to the DA's argument, the public instead "has an interest 'in the state not continuing to incarcerate individuals [like Jordan] who have not been accorded their constitutional rights to a fair trial.'" <u>Pouncy</u>, 168 F. Supp. 3d at 969 (quoting <u>House v. Bell</u>, No. 96 Civ. 883, 2008 WL 972709, at *2 (E.D. Tenn. Apr. 7, 2008), <u>vacated in part on other grounds</u>, 2008 WL 22325235 (E.D. Tenn. May 29, 2008)); <u>see</u> <u>Newman</u>, 917 F.

Supp. 2d at 789 ("The public has a significant interest in ensuring that individuals are not imprisoned in violation of the Constitution.")

The Court concludes that the DA has not established that Jordan poses any risk to the public. "While there is no overstating the significance of the crime[]" of which Jordan was convicted, "there is also no discounting the impact of nearly [eleven] years in prison on who [she] is today." Waiters, 168 F. Supp. 3d at 453. As noted above, Jordan had no criminal history before the February 2010 incident, and there is no evidence that she has received any disciplinary tickets at Bedford Hills, which also favors her release. See id.; Newman, 917 F. Supp. 2d at 790 (noting that petitioner had no record of a violent criminal history before his arrest in the case at issue nor any violent incidents while incarcerated).

The DA also contends that Jordan "presents far too much of a flight risk to be released with no securing order[.]" (ECF No. 44 ¶¶ 4, 11). While the DA points circumstances that Justice Solomon found justified denial of bail pending trial ten years ago — that Jordan was wealthy, had multiple residences and potentially hidden bank accounts, and was in possession of her passport at the time of her arrest — the DA does not offer any evidence to show that those circumstances exist today. Justice Solomon, of course, denied release on bail pending trial based on a framework that did not include a presumption of release, see N.Y. Crim. P. Law § 510.30, in contrast to the presumption of release that applies under Rule 23(c). In addition, Jordan's passport and driver's license have expired (see ECF No. 50 at 12), and the Court is aware of the fact that cross-border travel is virtually impossible given the current COVID-19 pandemic. See COVID-19 Travel Advisory, N.Y. Sate Information on Novel Coronavirus (last updated Nov. 4, 2020), https://coronavirus.health.ny.gov/covid-19-travel-advisory. To the extent there is any risk

of flight, the conditions that the Court imposes below will mitigate that risk.  See Waiters, 168 F.

Supp. 3d at 454 (imposing conditions to minimize risk of flight); Newman, 917 F. Supp. 2d at 790

(same).

Accordingly, the Court finds that the public interest weighs in favor of granting release

pending appeal.

\*     \*     \*

After considering each of the four Hilton factors under the circumstances of this case, the

Court concludes that the relevant factors weigh in favor of granting the DA's Stay Motion in part,

only to the extent that the Court modifies the retrial provision to defer the DA's obligation to

retry Jordan until fourteen days after the Second Circuit issues its decision ruling on his appeal.

The Court also finds that the relevant factors weigh in favor of granting the Release Motion in

part, to the extent that Jordan shall be transferred by Writ of Habeas Corpus Ad Prosequendum

into federal custody to permit Pretrial Services to conduct a bail interview and this Court to

conduct a bail hearing in contemplation of Jordan's release on the following conditions:

1. Jordan must post a bond in the amount of $250,000, co-signed by three financially

   responsible persons, and secured by $100,000 in cash or property.

2. Jordan shall reside at a location in New York City as approved by Pretrial Services, and

   may not relocate without advance authorization by Pretrial Services.

3. Jordan shall permit Pretrial Services to inspect her residence at any time and shall

   permit confiscation of any contraband observed in plain view of Pretrial Services.

4. Jordan shall be placed on electronic monitoring as directed by Pretrial Services, and will be permitted to self-install home monitoring equipment at the instruction and under the direction of Pretrial Services.

5. Jordan shall not commit any federal, state, or local crime.

6. Jordan shall not unlawfully use or possess a controlled substance unless prescribed by a physician with notice to Pretrial Services, and she will be subject to drug testing at the direction of Pretrial Services.

7. Jordan shall not possess a firearm, ammunition, destructive device, or other dangerous weapon.

8. Jordan shall not leave the Southern and Eastern Districts of New York unless otherwise authorized in advance by Pretrial Services.

9. Jordan must truthfully answer all inquiries by Pretrial Services and follow the instructions of Pretrial Services.

10. Jordan shall refrain from excessive use of alcohol.

11. Jordan shall not associate with any persons she knows to be engaged in criminal activity and shall not associate with any persons she knows to have been convicted of a felony unless otherwise authorized in advance by Pretrial Services.

12. Jordan must notify Pretrial Services within 48 hours of being questioned by a law enforcement officer.

13. The Court reserves the opportunity to hold a hearing, on its own motion or on the motion of any party or Pretrial Services, to consider whether to modify these conditions at any time.

See Waiters, 168 F. Supp. 3d at 454; Newman, 917 F. Supp. 2d at 792–93.  Following the bail interview by Pretrial Services, the Court will consider any additional conditions, or modifications to the above conditions, that Pretrial Services may recommend.

The Court will stay this Order for fourteen (14) days to permit the DA to make an application to the United States Court of Appeals for the Second Circuit.  See Waiters, 168 F. Supp. 3d at 455.

## IV.   CONCLUSION

For the reasons set forth above, the DA's Stay Motion is GRANTED IN PART and DENIED IN PART, and Jordan's Release Motion is GRANTED IN PART and DENIED IN PART, as follows:

(1)  The September 25 Order is modified to clarify that the DA's obligation to notify the Court of its intent to retry Jordan is deferred until fourteen (14) days after the Second Circuit issues its decision on the DA's appeal.

(2)  The DA's Stay Motion is otherwise DENIED.

(3)  Jordan's Release Motion is GRANTED to the extent that she shall be transferred into federal custody to permit an interview by Pretrial Services and a bail hearing before this Court in contemplation of her release on the conditions set forth above.

(4)  Jordan's Release Motion is otherwise DENIED.

(5)  The Court will issue separately a Writ of Habeas Corpus Ad Prosequendum in the form attached hereto as Exhibit A directing Jordan's transfer to federal custody.

(6)  This Order shall be STAYED for fourteen days to permit the DA to make an application to the United States Court of Appeals for the Second Circuit.  If no such application is

made, or if the DA's application to the Second Circuit is denied, the Court will lift the

stay and issue the Writ of Habeas Corpus Ad Prosequendum.

The Clerk is respectfully directed to close ECF Nos. 38 and 40.


Dated:        New York, New York
              November 12, 2020



                                          _____
                                          SARAH L. CAVE
                                          United States Magistrate Judge

**EXHIBIT A**

**WRIT OF HABEAS CORPUS AD PROSEQUENDUM**

TO:    Amy Lamanna, WARDEN
Bedford Hills Correctional Facility
247 Harris Rd,
Bedford Hills, NY 10507

        AND

UNITED STATES MARSHAL FOR THE
SOUTHERN DISTRICT OF NEW YORK

Greetings:

YOU ARE HEREBY COMMANDED to have the body of inmate **Gigi Jordan (Inmate No. 15G0448)** incarcerated in the above-stated correctional facility, under your custody as it is said, released into the custody of the United States Marshals Service or any other authorized city, state, or local law enforcement official, so that said inmate may transported under safe and secure conduct to the warden or other person in charge of the Metropolitan Correctional Center, New York, New York or other designated facility, there to be available for prosecution before the United States District Court for the Southern District of New York, 500 Pearl Street, New York, New York, 10007, as soon as available and no later than _____, pursuant to the attached Order issued by the Honorable Sarah L. Cave, United States Magistrate Judge, Southern District of New York.

WITNESS, the Honorable Sarah L. Cave, Magistrate Judge of the United States District Court for the Southern District of New York, at the United States Courthouse, 500 Pearl St., New York, New York, this ___th day of _____, 202_.


                                 _____
                                   Clerk, United States District Court
                                   Southern District of New York

The foregoing writ is hereby allowed.


                                 _____
                                   Sarah L. Cave
                                   United States Magistrate Judge